Good morning. I'm Sean Kajan. I represent the appellant Solorio. There are four reasons why a reversal is appropriate in this case. The first is the informant's recordings should not have been admitted into evidence because the government did not carry its burden to show that the recordings were free of coercion or undue pressure. The defense had presented and proffered the defense investigator's interview of the informant in which the informant said he became an informant because his wife was arrested. The government did not present any evidence showing that it was free of undue coercion or undue pressure. There was no testimony, no declaration, no written informant's agreement. And no evidence one way or the other? Well, I think there was evidence on our side, which was that the informant had said, and we expressed this to the judge, that he'd become an informant because his wife was arrested, which indicates that he was put under some sort of undue pressure, which it's the government's burden to show that his decision to become an informant was not based on any undue pressure or coercion. The cases that the government cites have within them testimony, specifically from an informant in some cases, where the informant testifies under oath that he became an informant under his own free will. That wasn't in this case. The informant never testified in this trial. Instead, when the informant was available, he was in custody in state prison. That's where we interviewed him. And so given that, the court at minimum should have held a hearing. Instead, the court denied our in limine pre-trial motion to exclude the informant's recordings. And that's where all the evidence really stemmed from was the informant's recordings. And how did the court rule on your request to take testimony of the informant? Denied. Was the denial of your motion to take, did you have a motion filed to take testimony of the informant? I don't, my recollection is. I didn't see that anywhere. Well, fair enough. My specific request was to exclude the evidence because it was free, it was not shown to be free of undue pressure or coercion. And it's the government's burden to, as your Honor would indicate, it was the government's burden to show that it was by his own free will and free of any undue pressure or coercion. Normally, and I agree, normally an informant's recordings are presumed to be by free will or without undue pressure given the fact that he's an informant and he's presumably agreeing to be recorded and agreeing to participate. But here we presented evidence which would indicate that that was not to be the case, given our investigator's interview of the informant, and we presented that to the court. The second basis, which I feel supports reversal, is how the judge reacted to the jury notes. The jury sent out two notes at 1145 a.m. indicating problems with legal issues, not factual issues, legal issues. One of them was whether they could consider the informant as a co-conspirator. And legally that's not correct. They cannot. Instead, how the judge treated those jury notes from the record was that he did not address them at all until a verdict was reached. Oh, but counsel, it's about lunchtime, right? Yes. And you know it would help if you could respond. The government has explained that the record shows that the judge came back, got the notes, called counsel, then a verdict came in, and when the jury reported back to the courtroom, he took it up. We've all read that part of the record, took it up and asked them, and the jury withdrew the question. So what about that? It's not that the judge – I don't think that's accurate. I don't think the judge – I was there, of course. I was trial counsel. Counsel, we're going from the record, so please, if you're going to give us a different chronology, you need to tell us where to find it in the record because that's not how it reads to us. So we weren't there. That's why we need your help with the record. If you think it rolled out differently, please point that out to us. The – Do you want to do that on – your time is ticking. Do you want to do it when you come back? I don't mean to use up your time. Oh, let me – I found it. Okay. The first time we, the defense counsel, heard about anything related to any notes is when we found out that there was a verdict. So it's not that we found out there were jury notes and then the verdict. And that was at CR 192. No, but you're assuming – my point was that you're assuming that the judge got the jury notes and then didn't do anything with them for some protracted period of time, that you weren't called. That's true. I am assuming that. That's true. Okay. So that's just what we can't get from the record because it was also about lunchtime. So it would be entirely consistent with the judge getting those simultaneously, I think, unless you're going to tell me that we've missed something. I mean, fair enough. My other assumption, the other assumption would be that he came back, that the court came back from lunch almost – it's unclear when he came back from lunch. That's really the problem. And so either he took a two-hour lunch, which is what we would assume, because that's what, according to the government, was the first time that he found out about any notes and any verdict. Because the court, when we were called back into the courtroom at 1.52, and that's what the CR refers to, and court began at 2 o'clock, the court came out and told us that he came back from lunch and that he'd been handed three things at the same time, two notes and the verdict. Right. What's wrong with the judge? Understanding that chronology, which I appreciate you clarifying, my understanding is that he got them at the same time. Yes. Okay. So then what's your argument? My problem with that is that that's too long. There's a jury out. They have legal questions. He's not addressing the legal questions in a timely manner. And so the jury is not some unguided missile where they can determine jury legal concepts on their own, which they're confused about. And so it's not appropriate to think that they worked it out all on their own, these legal concepts, and furthermore, it's not appropriate to think that the verdict wasn't affected on all counts based on the jury being unguided. Okay. That helps me understand your argument. Give me the times when the jury sent their notes out and the time when they said they had their verdict. 11.45 a.m. That's what's noted on the jury notes. That's when they sent the notes out? Yes, Your Honor. Okay. And when did they let the judge? By the time you all showed up in court, I think it was 1.53 or whatever it was. But when did the jury send out the notes saying they had a verdict? Because I think that's the period of time you're really complaining about. The only time you're really complaining. Oh, 1.48 p.m., stating that they had reached a unanimous verdict. Thank you. Yes. Well, I think that's error. I think that's structural error. At minimum, I think it can't be found to be harmless beyond a reasonable doubt, given that it directly, the note, at least one of the notes directly reflects one of the counts at issue, which is the conspiracy count. Yes, Your Honor. Let me see if I understand correctly. The district court judge had the verdict and the notes. The jury comes in, counsel are present. The judge calls the attention of these notes. The foreman says, we don't need anything for that. We've worked it out. That's correct. That seems to mean that the questions they're asking before are no longer relevant to the way they've decided, and the jury itself doesn't feel it needs an answer. Now, how could that be reversible error? I thought the judge handled it pretty well under the circumstance. The reason that it's reversible is because the jury, although the foreman did say that, that would mean that somehow the foreman had that legal concept explained to them. Either that or it became irrelevant to the way they were reaching the verdict, and they didn't have to go down that street. They went down a different street. You're assuming the worst. I'm suggesting there's an alternative, and we don't know. Now, how does that end up in a reversal? So the jury sends out a note. They've agreed to send out a note because they have a problem with a legal concept. The jury instructions do not address that legal concept. So how was that concept explained to the jury, which clearly had an issue with it? Your Honor, I apologize. Your Honors, yes, that's true. I am assuming that it went unanswered. I'm assuming, like, the two notes, from the jury's perspective, they're not being answered by the judge. Maybe he's on an extended lunch. But why send out another note? Why express any other problems when those questions are not being answered? And the jury instructions indicate to the jury to send out any notes if they have any questions, yet that's not being followed through on. This is a serious case. Mr. Solari ended up with a 20-year verdict. Counsel, you're out of time. Thank you. Can you just tell me, I understand your argument to be primarily that you think the jury's question went unanswered too long. What is your strongest case law authority in support of that argument? The strongest case that I have, I've cited the several cases which go into time frames, two hours being too long, maybe some. Counsel, you're on borrowed time now, so do you want to point out a case to me? The clock is ticking back up. It's Southwell. Okay. It's Louisiana, Sullivan v. Louisiana, which also, and the Supreme Court, which states that- I'm familiar with it. Thank you. Thank you, Counsel. We'll give you a little more time when you come back up. We'll hear from the government, please. Good morning, Your Honor. May it please the Court, Jennifer Cho on behalf of the United States. I do want to start with the jury note question and just note that Judge Wallace is actually, I think he's hit it right on the nose, which is that when they sent out the note regarding the question about conspiracy, over the time that they stayed before they broke for lunch and then came back again, it is reasonable to assume that the jury did work it out, that the question about can the CI be a co-conspirator became irrelevant because the verdict came back that they had convicted both the defendant, Solario, and co-defendant, Rivera, of conspiring with each other. The instructions that they were given was that they were, that the elements were that they had conspired with each other. The verdict form had co-conspirator singular, not in the plural. In fact, there was litigation over this between the parties, and the verdict form that went back to the jury said that, did you find that defendant Solario with his co-conspirator, et cetera, et cetera, on the verdict form. And so the reasonable assumption that can be drawn, and again, this is a plain error standard, is that the jury figured out that there was ample evidence to show that Solario and co-defendant Rivera were conspiring with each other, and that the question of the CI became irrelevant. And I'll note that their first question was about, you know, why does it matter that the gun traveled through another state, and they worked it out as well. I think we understand. Counsel, do you want to address the other argument? Yes, and that would be the question of the CI's consent. I want to put this court into the context of what was happening in the trial. Defense counsel has mentioned repeatedly that there was evidence that the defense had proffered that or had put forth to support his allegation, that the reason that the CI decided to cooperate was because, allegedly, his wife had been arrested. The first time that this allegation was actually made was at the hearing for motion, on a different motion, on the motion for CI discovery. That was the very first time that the defendant ever alleged that there was an issue with the voluntariness of the CI's consent. And he had already filed his motion limine to exclude the CI recordings for lack of consent, but never articulated his reason for why he thought that there was a problem with the consent. The government's opposition in the lead-up in that pretrial litigation, the government set forth evidence that the wiretap that was on the CI's phone was a consensual line, and that the CI obviously had knowledge that he was being monitored because every time he went out for a controlled meeting, the agents outfitted him with recording devices, him and his car. And under Glickman, that's all that the government has to show. So the first time that the defendant actually alleged the reason for this alleged involuntariness was at a motion hearing that was about a week before the trial. And the first time that the defendant ever actually put anything in writing, and he's, as Mr. Gajayan mentioned, it was a reply to the motion in limine in which the attorney proffered that his investigator would testify that the CI had said that the reason that he cooperated was because his wife had been arrested. There's been nothing more concrete other than this vague allegation, and that piece of paper was filed the Friday before trial, four days before trial.  And frankly, there was no error, there was no abuse of discretion by the district court not to hold an evidentiary hearing on that matter, because even if that vague allegation were true, even if it were true that the reason that the CI agreed to cooperate was to get some kind of hope for leniency or promise for leniency for his wife, the court is very clear that that is not coercion. It is not coercion. It does not vitiate consent to have to choose between two, as the court has put it, unpleasant alternatives where a decision to cooperate in the expectation of leniency for either yourself or for a third party, that does not constitute coercion. It does not render his voluntary consent somehow involuntary. And so it was not an abuse of the district court's discretion to deny the motion based on the record or to not hold an evidentiary hearing. Do you want to speak to the other arguments, or are you? Unless the court has questions, I'll submit. No. Thank you so much. Thank you, Your Honor. Two minutes, please. Thank you. Whether his wife, the informant's statement that his wife was arrested and that he agreed to cooperate, whether that was enough to, as the... Counsel, could I ask you to respond to the government's argument? Because I read the record the same way. I think it was raised for the first time in a reply brief, and I don't think the court had the transcript attached to the reply brief that the district court had the benefit of that transcript. So is your argument that you should have had an evidentiary hearing based upon that allegation in the reply, or what is your argument there? Well, I had filed the motion to exclude before then. But her position is that it hadn't been fleshed out. There wasn't this allegation about the wife being subject to criminal charges and that being the basis of your coercion argument. My response is this. That was not the notion that the government did not have enough time to respond was never expressed in the district court. Instead, the government responded that she was never arrested, and therefore there's no problem. And that's exactly, that's not sufficient. Her other argument is that under our case law, having to choose between two different distasteful choices isn't enough, Glickman. I think that's a factual issue. I don't think that's a matter, that's not in every case. We can't possibly say that because the wife, in fact, the district court, when I expressed that to the district court, and yes, fine, in the reply brief, the district court, and there was several issues being discussed at the same time, but the district court said that any evidence that would have influenced his decision to cooperate should be produced. That's what the district court ordered. That's not exactly, that's in response to the discovery request that I made. But my point is even the district court recognized that there's an issue here, and yes, the CR, the court's record indicates that my motion for the, to exclude the recordings was denied, but that still indicates that there was a problem there, and therefore the government should address that problem. They had an opportunity to. It's very, it's not a very complicated issue. Whether there was evidence that he voluntarily became a CI should not be so difficult to address, and it's their burden to show that, not to, at the time, not to come to the appeals court for the first time to say that they did not have an opportunity to address it. So for those reasons, the conviction should be reversed. Thank you. Thank you both. The next case on the calendar is United States of America v.
judges: Wallace, Christen, Watford